UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PERCY BROWN, Plaintiff,

v. Civil Action No. 3:16-cv-460-DJH

LOUISVILLE JEFFERSON COUNTY
METRO GOVERNMENT, et al., Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Percy Brown was incarcerated for more than seven years as he faced a series of charges ranging from witness intimidation to murder, all of which were eventually dismissed. Brown maintains that the charges and any evidence supporting them were manufactured by a group of police officers who resented him for his failure to cooperate in another case. He asserts various claims against the officers and their employers under 42 U.S.C. § 1983 and Kentucky law. (Docket No. 1) The defendants—Louisville Jefferson County Metro Government and several Louisville Metro Police Department officers (the "Metro defendants"), as well as the University of Louisville and University Police Officer Jeffrey G. Jewell (the "University defendants")—have moved to dismiss Brown's complaint for failure to state a claim. (D.N. 13; D.N. 33) For the reasons discussed below, the Court will grant the motions to dismiss.

I.     BACKGROUND

The following facts are set out in the complaint and taken as true for purposes of the present motions. *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citation omitted).

Jennifer French was shot to death in Louisville, Kentucky, at approximately 2:20 a.m. on September 16, 2004. (D.N. 1, PageID # 4) Early in the investigation of her murder, the "Defendant Officers"—Louisville Metro Police Department Detectives Michael Smithers,

Kristen Downs, Roy Stalvey, Brian Kuriger,[1] Officer Weathers, Keith Roberts, Gary Alcorn, and David Sanford; LMPD Lieutenants Todd Kessinger and Barry Wilkerson; and University of Louisville Police Officer Jeffrey G. Jewell—learned through interviews with two witnesses that Loveil "Dada" Burks and Cecil Gaines were responsible for the killing. (*Id.*, PageID # 3-6) However, Gaines and Burks were not interviewed "until months later," and neither was ever charged with French's murder. (*Id.*, PageID # 6) The Defendant Officers ceased their investigation after Gaines and Burks were identified, and they "eventually classified the French murder as a cold case." (*Id.*)

The Defendant Officers "suspected Mr. Brown of being involved in a check forgery scheme but could never prove it." (*Id.* ¶ 28) On December 3, 2004, while questioning Montoya Tyson about a forged check she had attempted to cash, Defendants Smithers and Alcorn learned that Tyson knew Brown.[2] (*Id.* ¶ 29) During another interrogation a few days later, Smithers and Jewell "provided Tyson with facts relating to the French homicide and urged her to falsely implicate Mr. Brown" by stating that she had "heard from Shaquita Guthrie that Mr. Brown killed French." (*Id.* ¶ 30) Tyson had not previously suggested to the officers that she knew anything about the French murder. (*Id.*, PageID # 7 ¶ 30) A receipt reproduced in the complaint shows that Brown was gambling at a casino in another state when French was killed. (*Id.* ¶ 32)

Later in December 2004, Brown was taken into custody by Milwaukee police in connection with a check-forgery scheme. (*Id.*, PageID # 8 ¶ 34) Defendants Smithers and

---

[1] Kuriger was incorrectly identified in the complaint as "Brian Kurigan." (*See* D.N. 33, PageID # 281 n.1; D.N. 1, PageID # 1)

[2] The complaint alleges that the Tyson interview took place "less than six weeks after the French homicide." (D.N. 1, PageID # 6 ¶ 29) In fact, eleven weeks had passed. (*See id.*, PageID # 4)

Sanford, accompanied by two other detectives, traveled to Milwaukee to interrogate him.[3]  (*Id.*)  When Brown refused to admit to the check-forgery scheme and asked to consult a lawyer, Smithers "became enraged" and threatened to "hang the French murder on" him.  (*Id.* ¶ 36)

Defendant Downs, who was assigned to investigate French's murder, "refused to investigate anyone other than" Brown.  (*Id.*, PageID # 9 ¶ 40)  She spoke to Burks only once and never interviewed Gaines.  Nor did she interview Henry Humphries, one of the two witnesses who had identified Burks.  (*Id.*)  Instead, Downs "teamed up with the other Defendant Officers to leverage witnesses into falsely implicating Mr. Brown of murder and other violent offenses."[4]  (*Id.* ¶ 41)  In the course of the alleged conspiracy, "[t]he Defendant Officers . . . manufactur[ed] witnesses and fabricat[ed] evidence in an effort to keep Mr. Brown incarcerated."  (*Id.* ¶ 42)  Specifically, the officers approached several female suspects in the check-forgery investigation and offered to dismiss their pending charges in exchange for false accusations of sexual assault against Brown.  (*Id.* ¶ 43)  One suspect, Andrea Foster, was "threaten[ed]" by Downs and Smithers for "nearly an hour into falsely implicating Mr. Brown" although she repeatedly denied that Brown had ever sexually assaulted her.  (*Id.*, PageID # 10 ¶ 44)

---

[3] According to the complaint, "Defendant Smithers contacted the Milwaukee Police Department after obtaining Tyson's false statements against Mr. Brown" and "falsely portrayed himself as an agent working for the United States Secret Service during the phone conversation that ensued." (D.N. 1, PageID # 8 ¶ 33)  This allegation does not contain a date but precedes the paragraph describing Brown's interrogation in Milwaukee.  (*See id.* ¶¶ 33-34)  The precise sequence of alleged events, as well as any causal connection between Smithers's call and Brown's detention, is thus unclear.

[4] The complaint's chronology is unclear on this point as well.  Brown alleges that "the Defendant Officers" knew "[w]ithin days of" French's murder that Burks and Gaines were responsible. (D.N. 1, PageID # 5 ¶ 24; *see also id.* ¶ 22 ("At the beginning of the investigation, the Defendant Officers interviewed Humphries and Trice.  In those interviews, the Defendant Officers learned that Burks and Gaines were responsible for the murder of French."))  Smithers's alleged threat to frame Brown for the murder, which Downs purportedly sought to fulfill by forgoing "a legitimate investigation," was not made until more than three months after the murder.  (*Id.*, PageID # 9 ¶ 41; *see id.*, PageID # 8 ¶¶ 34-36)

In exchange for accusing Brown of sodomy and murder, Tyson was sentenced to three years' probation in the check-forgery case. (*Id.* ¶ 45) When she violated the terms of her probation in December 2008, she was instructed by "the Defendant Officers" that she could avoid arrest for the probation violations only by claiming to have seen Brown murder French. (*Id.* ¶ 46) Six days later, Brown was arrested for the French murder. (*Id.* ¶ 47) He was indicted the next day solely on the basis of Tyson's coerced statement. (*Id.* ¶ 48)

In the eight years that followed, Brown was also charged with rape, kidnapping, sodomy, assault, wanton endangerment, and witness intimidation—all based solely on false evidence generated by "the Defendant Officers." (*Id.*, PageID # 11 ¶ 51; *see also id.*, PageID # 12 ¶ 56) These charges were eventually dismissed, with the final dismissal occurring on April 5, 2016. (*Id.*, PageID # 13 ¶ 61) Until that time, "the Defendant Officers actively concealed from Mr. Brown, the prosecutors, and the courts[] the falsity of the evidence they fabricated, the methods by which they fabricated, and the scope of their fabrication." (*Id.*, PageID # 11 ¶ 53)

The complaint alleges a pattern of similar misconduct involving LMPD officers and a failure to discipline those officers. (*Id.*, PageID # 13-16) Specifically, Brown points to three cases from the 1990s in which LMPD officers were accused of "wrongly arrest[ing], maliciously prosecut[ing,] and cover[ing] up or withh[olding] exculpatory and impeachment information from an[] innocent suspect." (*Id.*, PageID # 15 ¶ 68; *see id.* ¶¶ 69-70) According to the complaint, these cases reflect "policies and practices . . . [that] were consciously approved by the municipal defendants' policymakers who were deliberately indifferent to the violations of constitutional rights." (*Id.*, PageID # 16 ¶ 73)

Brown asserts claims of malicious prosecution, fabrication of evidence, supervisory liability, failure to intervene, conspiracy to deprive of constitutional rights, and municipal

4

liability, all under 42 U.S.C. § 1983, as well as state-law claims of malicious prosecution, negligent supervision, intentional infliction of emotional distress, and respondeat superior. (*Id.*, PageID # 17-25) He seeks to recover damages for the time he spent incarcerated and the resulting pain and suffering. (*Id.*, PageID # 16) Brown concedes to dismissal of his claim of malicious prosecution under Kentucky law, his claim of respondeat superior against the University of Louisville, and "any perceived claims against Defendant Jewell in his official capacity."[5] (D.N. 34, PageID # 354 n.1) He has likewise abandoned his state-law claims against Metro Government and his negligent-supervision claims against Defendants Kessinger and Wilkerson. (D.N. 38, PageID # 413 n.2) The Court's analysis will be limited accordingly.

## II. ANALYSIS

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

---

[5] Brown indicates that he did not intend to assert official-capacity claims against Jewell. (*See* D.N. 34, PageID # 354 n.1) Any official-capacity claims against the LMPD officers would be barred by sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66, 169 (1985) (citing *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945)); *Jewish Hosp. Healthcare Servs. v. Louisville/Jefferson County Metro Gov't*, 270 S.W.3d 904, 907 (Ky. Ct. App. 2008).

A.      Motions to Dismiss

At the outset, the Court will narrow the scope of its analysis by identifying those defendants against whom Brown has clearly failed to state a claim: Stalvey, Kuriger, Weathers, Roberts, Alcorn, Sanford, Kessinger, and Wilkerson.

The complaint does not contain a single substantive allegation against Defendant Stalvey, Kuriger, or Roberts.  (*See* D.N. 1)  As to Defendant Alcorn, it asserts only that he questioned Tyson on December 3, 2004, and that "[d]uring that interrogation, the Defendant Officers discovered that Tyson knew Mr. Brown."  (*Id.*, PageID # 6 ¶ 29)  With regard to Defendant Sanford, the complaint alleges that he accompanied Defendant Smithers to Milwaukee to interrogate Brown and, with Smithers, "remained in the interrogation room after ignoring Mr. Brown's request for an attorney."  (*Id.*, PageID # 8 ¶ 36)

To avoid dismissal of his § 1983 claims, Brown "must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right."  *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).  The Court "cannot ascribe the acts of all Individual Defendants" (or here, the "Defendant Officers") "to each individual defendant."  *Id.* (citations omitted).  Because the complaint does not "allege, with particularity," any facts showing how each of these defendants violated Brown's constitutional rights, *id.*, his claims against Defendants Stalvey, Kuriger, Roberts, Alcorn, and Sanford fail.[6]

---

[6] Defendant Weathers has not responded to the complaint.  The Court may dismiss the claims against Weathers sua sponte upon notice to the parties and an opportunity for Brown to respond. *See Estate of Abdullah v. Arena*, 601 F. App'x 389, 396 (6th Cir. 2015) (citing *Morrison v. Tomano*, 755 F.2d 515, 516 (6th Cir. 1985); *Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983)).

Moreover, although Count III alleges that Kessinger and Wilkerson "were personally involved in the case against [Brown] and knew or . . . should have known of their subordinates' unconstitutional actions and related misconduct" (D.N. 1, PageID # 19 ¶ 94), the complaint contains no facts supporting these assertions. Nor does Brown allege facts from which the Court may reasonably infer that Kessinger and Wilkerson failed to adequately train or supervise the other officer defendants. (*See id.*, PageID # 19-20 ¶¶ 93, 95-98) In the absence of factual support, these conclusory allegations "are not entitled to the assumption of truth" and do not state a plausible claim for relief. *Iqbal*, 556 U.S. at 679; *see Heyne*, 655 F.3d at 564. Brown's remaining claims against Kessinger and Wilkerson will therefore also be dismissed, leaving Smithers and Downs as the only LMPD defendants.

Finally, although Brown's complaint names "City of Louisville" as a defendant, he offers no substantive challenge to the Metro defendants' assertion that such an entity no longer exists and did not exist at the time of the alleged wrongdoing. (*See* D.N. 33-1, PageID # 292 & n.14; D.N. 38, PageID # 413) Indeed, the complaint acknowledges that Metro Government "is the successor of the City of Louisville and Jefferson County" and that "[s]ince January 6, 2003, the Metro Government has been the employer of some or all of the individual defendants named" in the complaint. (D.N. 1, PageID # 3-4 ¶ 15) The Court will therefore construe the claims against the "municipal defendants" (*id.*, PageID # 13 ¶ 64) as claims against Metro Government only. *See Cross v. Louisville Police Dep't*, No. 3:15CV-874-GNS, 2016 U.S. Dist. LEXIS 71719, at \*6-\*7 (W.D. Ky. June 2, 2016) (citing *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 14 (Ky. Ct. App. 2009); *St. Matthews Fire Prot. Dist. v. Aubrey*, 304 S.W.3d 56, 60 (Ky. Ct. App. 2009)).

Brown's § 1983 and emotional-distress claims against Smithers, Downs, Jewell, Metro Government, and the University of Louisville remain. None can survive the motions to dismiss.

1.  **§ 1983 Malicious Prosecution (Count I)**

The parties initially dispute whether Brown's malicious-prosecution claim arising out of the murder charge is time-barred. (*See* D.N. 13-1, PageID # 141-42; D.N. 33-1, PageID # 288-89; D.N. 34, PageID # 355-61; D.N. 38, PageID # 414-20) According to the defendants, the one-year statute of limitations for this claim began to run when the murder charge was dismissed on February 24, 2015, and thus expired several months before this action was filed.[7] (D.N. 33-1, PageID # 288-89; *see* D.N. 33-10; D.N. 13-1, PageID # 141) *See King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) ("In Kentucky, a one-year statute of limitations applies to § 1983 claims that are characterized as malicious-prosecution claims." (citations omitted)). Brown maintains that his malicious-prosecution claim accrued upon dismissal of the final charge on April 5, 2016. (D.N. 38, PageID # 416-18) He characterizes the defendants' position as "frivolous," arguing that the claim rests on false charges of not only murder, but also "rape, kidnapping, sodomy, assault, wanton endangerment, and witness intimidation." (*Id.*, PageID # 417 (quoting D.N. 1, PageID # 11 ¶ 50)) The claim itself, however, refers only to the murder charge. (*See* D.N. 1, PageID # 17 ¶ 79 ("[T]he Defendant Officers made, influenced and/or participated in the

---

[7] Brown challenges the Metro defendants' use of documents from the underlying criminal case to show when the murder charge was dismissed. (D.N. 38, PageID # 415-16) Although matter beyond the pleadings normally may not be considered on a motion to dismiss under Rule 12(b)(6), "a court may consider . . . public records . . . and exhibits attached to [the] motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citations omitted). Here, Brown's complaint refers to the dismissal of the murder charge, and the fact of that charge's dismissal is central to (at minimum) his malicious-prosecution claim. (*See* D.N. 1, PageID # 13 ¶ 61, PageID # 17 ¶ 80) The order of dismissal (D.N. 33-10) may therefore properly be considered. As explained below, however, Brown's claim would fail whether or not it was timely filed.

decision to prosecute Mr. Brown for murder, for which prosecution there was no probable cause and which caused Mr. Brown to suffer a deprivation of liberty.")) Thus, the claim accrued when the murder charge was terminated in Brown's favor, *see Manuel v. City of Joliet*, 137 S. Ct. 911, 921 (2017) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484, 489 (1994)), and is barred by the statute of limitations.

Brown's malicious-prosecution claim is not adequately pleaded to survive a motion to dismiss in any event. Malicious prosecution under § 1983 consists of four elements:

> (1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure, and (4) the criminal proceeding was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (alteration in original) (quoting *Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017)). Again, to satisfy *Twombly* and *Iqbal*, Brown "must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right," *Heyne*, 655 F.3d at 564 (citation omitted), and may not rely on broad allegations of collective wrongdoing. *See id.*; *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (citing *Lanman*, 529 F.3d at 684) (finding that complaint's collective references to "Defendants" failed to satisfy requirement that plaintiff allege specific facts showing how each defendant violated a constitutional right). But Count I of Brown's complaint alleges broadly that "the Defendant Officers made, influenced, or participated in the decision to prosecute Mr. Brown for murder" without probable cause (D.N. 1, PageID # 17 ¶ 79), and the facts offered to support this allegation are similarly vague: Brown asserts that "the Defendant Officers instructed Tyson to claim . . . that she witnessed Mr. Brown commit the [French] murder" (*id.*, PageID # 10 ¶ 46); that "the false and fabricated statement by Tyson was used to

9

obtain an indictment against Mr. Brown" (*id.*, PageID # 10 ¶ 48); and that "[t]his evidence, which the Defendant Officers knew to be false, was the only evidence of criminality offered at the grand-jury hearing that tied Mr. Brown to the murder of Jennifer French."[8] (*Id.*) Brown thus fails to state a plausible claim of malicious prosecution as to Defendant Smithers, Downs, or Jewell.

### 2. § 1983 Fabrication of Evidence (Count II)

According to the Metro defendants, Brown's fabrication-of-evidence claim must be treated as a claim for violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and fails because the underlying proceeding was terminated in Brown's favor.[9] (D.N. 33-1, PageID # 290) The Court rejects the Metro defendants' characterization of Count II, as the Sixth Circuit has expressly disapproved of the practice of collapsing a fabrication claim into a *Brady* claim. *See Mills v. Barnard*, No. 16-6597, 2017 U.S. App. LEXIS 16359, at *22 (6th Cir. Aug. 28, 2017) ("The district court combined the fabrication claim and the withholding claim into one, but this was in error."). Nevertheless, the Court finds this claim insufficient.

"A Fourth Amendment claim for fabrication of evidence lies where a defendant knowingly manufactures probable cause, thereby effecting a seizure."[10] *Robertson v. Lucas*, 753

---

[8] Because Tyson's December 2008 statement is alleged to have been the sole basis of the murder indictment (*see* D.N. 1, PageID # 10 ¶ 48), the allegation that Smithers and Jewell "coerced Tyson into claiming that she heard from Shaquita Guthrie that Mr. Brown killed French" four years earlier does not support the malicious-prosecution claim. (*Id.*, PageID # 6 ¶ 30)

[9] On the preceding page of their brief, the Metro defendants argue that Brown's malicious-prosecution claim should be dismissed because he has not shown that the criminal proceedings were terminated in his favor. (D.N. 33-1, PageID # 289)

[10] Some authorities suggest that this cause of action is available only to a plaintiff who was convicted based on the fabricated evidence. *See Mills*, 2017 U.S. App. LEXIS 16359, at *20 ("The basis of a fabrication-of-evidence claim under § 1983 is an allegation that a defendant 'knowingly fabricated evidence against [a plaintiff], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of the jury.'" (alterations in original) (quoting *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997))); *see also* Michael

F.3d 606, 616 n.5 (6th Cir. 2014) (citing *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999)). As before, Brown's claim fails for lack of specificity. Count II alleges that "the Defendant Officers knowingly fabricated" evidence that likely led to findings of probable cause and Brown's detention. (D.N. 1, PageID # 18 ¶ 88, PageID # 19 ¶¶ 90-91) Although Brown alleges in detail that Smithers and Downs pressured Andrea Foster to falsely accuse him of sexual assault (*id.*, PageID # 9-10), he does not allege that Foster's false accusation formed the basis of any charge that was brought against him. (*See id.*, PageID # 9-12) Nor does he assert that Smithers and Downs were responsible for initiating false sexual-assault charges against him; instead, the complaint alleges generally that "[o]ver the next eight years, the Defendant Officers initiated false charges against Mr. Brown for murder, rape, kidnapping, sodomy, assault, wanton endangerment, and witness intimidation." (*Id.*, PageID # 11 ¶ 50) Such collective allegations cannot support a claim under § 1983.[11] *See Marcilis*, 693 F.3d at 596-97. The fabrication claim will therefore be dismissed.

### 3. § 1983 Supervisory Liability (Count III), Failure to Intervene (Count IV), Conspiracy (Count V), and Municipal Liability (Count VI)

In light of Brown's failure to adequately allege an underlying constitutional violation, *see supra* Part II.A.1-2, his remaining § 1983 claims also fail. *See Stiles v. Grainger Cty.*, 819 F.3d 834, 855 (6th Cir. 2016) ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." (alteration in original) (quoting

---

Avery, *Symposium: Obstacles to Litigating Civil Claims for Wrongful Conviction: An Overview*, 18 B.U. Pub. Int. L.J. 439, 445 (2009) ("When the fabrication of evidence by law enforcement leads to a wrongful conviction, there is a sufficient basis for a cause of action under § 1983." (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001))). Brown's fabrication claim thus may fail for this additional reason.

[11] The December 2004 interrogation of Tyson by Smithers and Jewell, which is not alleged to have resulted in any criminal charges, again provides no support for Brown's claim. (*See* D.N. 1, PageID # 6 ¶ 30)

*McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006))); *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013) (citing *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009)) (affirming dismissal of § 1983 conspiracy claim for lack of underlying constitutional violation); *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers."). (*See* D.N. 1, PageID # 20 (alleging that "during the constitutional violations described above, one or more of the Defendant Officers stood by without intervening to prevent the misconduct")) Each of these claims is also deficient because Brown has failed to allege facts specifying what any individual defendant did to violate his constitutional rights. *See Marcilis*, 693 F.3d at 596-97; *Heyne*, 655 F.3d at 563-64. (*See, e.g.*, D.N. 34, PageID # 374-75 (quoting conspiracy allegations, all of which refer generally to "the Defendant Officers"))

### 4. Intentional Infliction of Emotional Distress (Count IX)

Having dismissed all of Brown's federal claims, the Court declines to consider his remaining state-law claim. *See* 28 U.S.C. § 1367(c)(3).

### B. Motion to Strike

Brown moves pursuant to Rule 12(f)(2) to strike a portion of the University defendants' reply in support of their motion to dismiss, on the ground that the reply raises issues not mentioned in the initial motion. (D.N. 39) Specifically, Brown contends that section 1 of the University defendants' reply brief improperly argues that the criminal proceedings against him were not resolved in his favor. (*Id.*, PageID # 433; *see* D.N. 36, PageID # 399-400) According to Brown, this argument is waived because it was not addressed in the University defendants' motion to dismiss. (*See* D.N. 39, PageID # 433)

Rule 12(f), which permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," does not apply in this situation, as the defendants' reply is not a pleading. Fed. R. Civ. P. 12(f); *see* Fed. R. Civ. P. 7(a) (defining "pleading" to include "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."); *Stillwagon v. City of Del.*, 175 F. Supp. 3d 874, 889-90 (S.D. Ohio 2016) ("Rule 12(f) . . . does not authorize the Court to strike arguments made in a brief." (citations omitted)). And although the Court may "disregard arguments that are made for the first time in a reply brief," *Stillwagon*, 175 F. Supp. 3d at 890 (citations omitted), that is unnecessary here. As set forth above, the Court's dismissal of the malicious-prosecution claim does not turn on whether Brown's prosecution was resolved in his favor. *See supra* Part II.A.1. Moreover, the Court would have considered the argument in any event, as it was raised in the Metro defendants' motion to dismiss. (*See* D.N. 33-1, PageID # 289-90) The motion to strike will be denied.

### III. CONCLUSION

Brown's allegations, if true, are deeply disturbing. As pleaded here, however, they fail to state a plausible claim for relief. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The motion to dismiss of Defendants Jeffrey G. Jewell and University of Louisville (D.N. 13) is **GRANTED**.

(2) The motion to dismiss of Defendants Louisville Jefferson County Metro Government, City of Louisville, Smithers, Downs, Stalvey, Kuriger, Roberts, Alcorn, Sanford, Kessinger, and Wilkerson (D.N. 33) is **GRANTED**.

(3) The Court hereby gives **NOTICE** to the parties of its intent to dismiss Brown's claims against Officer Weathers sua sponte. Within **twenty-one (21) days** of the date of entry of this Order, Brown shall **SHOW CAUSE** why his claims against Defendant Officer Weathers should not also be dismissed for the reasons explained in Part II.A above.

(4) Brown's motion to strike (D.N. 39) is **DENIED**.

September 27, 2017

**David J. Hale, Judge
United States District Court**