**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

<table>
<tr><td>Kelly L. Stephens<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed:  April 30, 2025

Mr. Matthew Warren Barszcz
Dinsmore & Shohl
101 S. Fifth Street
Suite 2500
Louisville, KY 40202

Ms. Donna King Perry
Dinsmore & Shohl
101 S. Fifth Street
Suite 2500
Louisville, KY 40202

Mr. Jeremy S. Rogers
Dinsmore & Shohl
101 S. Fifth Street
Suite 2500
Louisville, KY 40202

Mr. Elliot Slosar
Exoneration Project
311 N. Aberdeen Street
Third Floor
Chicago, IL 60607

Ms. Amy Robinson Staples
Exoneration Project
311 N. Aberdeen Street
Third Floor
Chicago, IL 60607

Re:  Case No. 23-5673, *Percy Brown v. Louisville-Jefferson Co, KY, et al*
Originating Case No. : 3:16-cv-00460

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. James J. Vilt Jr.

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0111p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

PERCY DWAYNE BROWN,

*Plaintiff-Appellant*,

*v.*

No. 23-5673

LOUISVILLE-JEFFERSON COUNTY METRO GOVERNMENT,
et al.,

*Defendants*,

JEFFREY G. JEWELL, in his individual capacity,

*Defendant-Appellee*.

---

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:16-cv-00460—David J. Hale, District Judge.

Argued: October 31, 2024

Decided and Filed: April 30, 2025

Before: CLAY, WHITE, and NALBANDIAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Elliot Slosar, LOEVY & LOEVY, Chicago, Illinois, for Appellant. Matthew Barszcz, DINSMORE & SHOHL LLP, Louisville, Kentucky, for Appellee. **ON BRIEF:** Elliot Slosar, Amy Robinson Staples, LOEVY & LOEVY, Chicago, Illinois, for Appellant. Matthew Barszcz, Donna King Perry, Jeremy S. Rogers, DINSMORE & SHOHL LLP, Louisville, Kentucky, for Appellee.

----

## OPINION

----

HELENE N. WHITE, Circuit Judge.    Plaintiff-Appellant Percy Brown appeals the dismissal of his malicious-prosecution claim against Defendant-Appellee Jeffrey Jewell as barred by the statute of limitations.  We AFFIRM.

## I.  Background

Brown alleges that University of Louisville Police Officer Jewell and several Louisville Metro Police Department (LMPD) officers framed him for kidnapping, murder, rape, sodomy, and wanton endangerment after he refused to cooperate in a check-forging investigation.  Over the course of more than ten years, the Commonwealth of Kentucky brought and dismissed numerous charges against Brown, resulting in Brown's spending more than seven years behind bars.  After the final indictment was dismissed, Brown filed this action.  The district court dismissed the malicious-prosecution claim arising from the murder charge as barred by the statute of limitations and granted Jewell's motion for judgment on the pleadings on Brown's fabrication-of-evidence claim.  Brown now appeals the dismissal of the malicious-prosecution claim as time-barred.

## A. Factual Background[1]

Jennifer French was murdered on September 16, 2004, in Louisville, Kentucky.  Brown alleges that, "[w]ithin days of French being killed," Jewell and LMPD Detectives Michael Smithers, Kristen Downs, Brian Kuriger, Gary Alcorn, and David Sanford learned through witness interviews that two people other than Brown—Loveil Burks and Cecil Gaines—killed French.[2]  R. 54, PID 632.  Brown was out of town gambling at the time of the murder—an alibi he substantiates with a casino receipt.

----

[1]Because Brown is appealing a motion for judgment on the pleadings, we take the well-pleaded factual allegations as true. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).

[2]Brown initially alleged that LMPD Detectives Roy Stalvey and Keith Roberts, LMPD Lieutenants Todd Kessinger and Barry Wilkerson, and LMPD Officer Weathers also learned of this information at the same time as

No. 23-5673          *Brown v. Louisville-Jefferson Cnty. Metro Gov't, et al.*          Page 3

In December 2004, LMPD arrested Montoya Tyson for attempting to cash a forged check. Detectives Smithers and Alcorn questioned Tyson at the time of her arrest and learned that Tyson knew Brown, whom they suspected of being involved in a check-forgery scheme. One week later, Smithers and Jewell questioned Tyson again. During that interview, Tyson said that Brown had forced French to perform oral sex on him. Tyson also said that her child's father, Raymond Kennedy, told her that Shaquita Guthrie said Brown killed French. But Guthrie never told Kennedy or Tyson the basis for that accusation. Tyson made no allegation that Brown had sodomized her.

After the interview, Smithers called the Milwaukee Police Department, allegedly prompting Brown's arrest in connection with a check-forging scheme. When Brown refused to cooperate with Defendants' investigation into the check-forging scheme, Detectives Sanford and Smithers threatened to frame him for French's murder.

A grand jury indicted Brown on January 6, 2005, on two counts of sodomy involving Tyson. Brown alleges that the indictment was based on Tyson's December 2004 statement. A judge granted the prosecution's motion to dismiss the January 2005 indictment without prejudice almost a year later, on December 4, 2006.

In December 2008, Tyson gave a new statement to LMPD—one that Brown alleges Detectives Kuriger and Downs fabricated—alleging that Brown murdered French. That same day, Kuriger allegedly fabricated Michelle Connely's witness statement, which claimed that Brown threatened to kill her if she testified against him. Based on Tyson's and Connely's statements, a grand jury indicted Brown on December 16, 2008, on four counts: one count of murder involving French (Count 1), one count of sodomy involving Tyson (Count 2), and two counts of intimidating a participant in the legal process involving Tyson and Connely (Counts 3

---

Smithers, Downs, Kuriger, Alcorn, Sanford, and Jewell. Brown named Stalvey, Roberts, Kessinger, Wilkerson, and Weathers as defendants in the initial Complaint, but did not repeat these allegations against Stalvey, Roberts, Todd, Kessinger, Wilkerson, and Weathers or name them as defendants in his Amended Complaint.

No. 23-5673          *Brown v. Louisville-Jefferson Cnty. Metro Gov't, et al.*          Page 4

and 4, respectively).  The trial court dismissed the December 2008 indictment on March 17, 2009.[3]

A string of additional indictments and dismissals followed the December 2008 indictment.  First, in February 2009, a grand jury indicted Brown on nine counts:  one count of murder involving French (Count 1); one count of kidnapping involving Jennifer Renfro (Count 2); three counts of sodomy involving Renfro and Tyson (Counts 3–5); three counts of intimidating a participant in the legal process involving Tyson, Connely, and French[4] (Counts 6–8); and one count of wanton endangerment involving Renfro (Count 9).  After Downs manufactured a false statement from Nina Snow, a grand jury indicted Brown on another four counts in January 2010:  two counts of sodomy (Counts 1–2), one count of assault (Count 3), and one count of wanton endangerment (Count 4), all involving Snow.  On October 18, 2010, the trial court granted the Commonwealth's motion to consolidate the proceedings from the February 2009 and January 2010 indictments.

The next developments came in May 2014.  Brown alleges that, on May 16, 2014, Downs pressured Talesha Lynch[5] into making a false witness statement.  Based on that statement and Downs' testimony about it, a grand jury indicted Brown on May 29, 2014, on four counts:  one count of rape (Count 1) and three counts of sodomy (Counts 2–4), all involving Lynch.  Then, on January 20, 2015, the court granted the Commonwealth's motion to dismiss the February 2009 charges for kidnapping (Count 2), sodomy (Counts 3, 4, and 5), and wanton endangerment (Count 9), along with the entire January 2010 indictment.  This left the four charges from the February 2009 indictment:  one count of murder (Count 1) and three charges of intimidating a participant in the legal process (Counts 6–8).

---

[3]The Jefferson County Circuit Court order does not say whose motion the court was granting when it dismissed the December 2008 indictment.  However, nothing in the record suggests that the Commonwealth opposed the dismissal.

[4]Although French was deceased at the time of the February 2009 indictment, the indictment charges Brown with intimidating her prior to her death.

[5]Renfro, Snow, and Lynch were suspects in the check-cashing scheme.  Brown alleges that the officers offered to dismiss criminal charges against Renfro, Snow, and Lynch in exchange for them falsely accusing Brown of sexual assault.

The Commonwealth secured yet another grand-jury indictment against Brown on February 23, 2015. The February 2015 indictment included fourteen counts: eight counts of sodomy involving Tyson, Snow, Lynch, and Renfro (Counts 1–8); one count of kidnapping involving Renfro (Count 9); one count of rape involving Lynch (Count 10); one count of assault involving Snow (Count 11); two counts of wanton endangerment involving Snow and Renfro (Counts 12–13); and one count of intimidating a participant in the legal process involving Tyson (Count 14). The next day, on February 24, 2015, the court granted the prosecution's motion to dismiss the murder charge (Count 1) and the charges for intimidating a participant in the legal process (Counts 6, 7, and 8) from the February 2009 indictment without prejudice, thus completing the dismissal of all charges in the February 2009 indictment. Eight months later, on October 30, 2015, the court dismissed the May 2014 indictment. Finally, the court granted the Commonwealth's motion to dismiss the February 2015 indictment on April 5, 2016**.**

## B. Procedural History[6]

Brown filed a 10-count Complaint against Alcorn, the City of Louisville, Downs, Jewell, Kessinger, Kuriger, the Louisville-Jefferson County Metro Government (LJCMG), Roberts, Sanford, Smithers, Stalvey, Weathers, Wilkerson, and the University of Louisville on July 15, 2016.[7] He brought six claims under 42 U.S.C. § 1983: malicious prosecution (Count 1), fabrication of false evidence (Count 2), supervisory liability (Count 3), failure to intervene (Count 4), conspiracy to deprive constitutional rights (Count 5), and a "*Monell* Claim" against the LJCMG (Count 6). R. 1, PID 17–22. He also brought four state-law claims: malicious prosecution (Count 7), negligent supervision (Count 8), intentional infliction of emotional distress (IIED) (Count 9), and "Respondeat Superior" (Count 10). *Id.* at PID 23–25.

---

[6]Brown previously filed two lawsuits in the Western District of Kentucky based on these facts; one in August 2009 (case 3:09-cv-653) and one in October 2009 (case 5:09-cv-180). The district court consolidated the two cases, administratively dismissed case 5:09-cv-180, and incorporated the pleadings from the dismissed case into the remaining case. It then dismissed without prejudice the official-capacity claims against Downs, as well as LMPD detective Denny Butler and LMPD probation and parole officer Mitchell Blum, for failure to state a claim. It also dismissed with prejudice the claims against Assistant Commonwealth's Attorneys Erin White and R. David Stengel. And it dismissed without prejudice the individual-capacity claims against Downs, Butler, and Blum because the state-court criminal case was ongoing. The instant case is a separate case arising from the same facts.

[7]Kuriger was incorrectly identified in the Complaint as "Brian Kurigan." R. 1, PID 1; R. 43, PID 454 n.1.

No. 23-5673          *Brown v. Louisville-Jefferson Cnty. Metro Gov't, et al.*          Page 6

The specific allegations against Jewell pertained only to the December 2004 interrogation of Tyson and Tyson's statement obtained that day regarding the French murder and an allegation of sodomy involving Tyson.  Although the Complaint makes numerous allegations against the other Defendants specifically, and against Defendants generally, there are no specific allegations against Jewell regarding any other actions by him or his involvement in any of the other charges against Brown.

Jewell and the University of Louisville jointly moved to dismiss the claims against them for failure to state a claim.  As relevant here, they argued that the § 1983 claims stemming from the murder charge were time-barred because they accrued when the state court dismissed that charge on February 24, 2015.  The LJCMG, the City of Louisville, Smithers, Downs, Stalvey, Kuriger, Roberts, Alcorn, Sanford, Kessinger, and Wilkerson also moved to dismiss the claims against them, arguing in relevant part that the claims against them arising from the murder charge were time-barred for the same reason put forth by Jewell and the University of Louisville. In response, Brown argued that the claims were not time-barred because they did not accrue until the last criminal charges against him were dismissed on April 5, 2016.

The district court granted both motions to dismiss.  It began by finding that Brown had not pleaded the claims against Stalvey, Kuriger, Weathers, Roberts, Alcorn Sanford, Kessinger, and Wilkinson with sufficient specificity to survive a motion to dismiss.[8]  Next, the district court dismissed the claims against the City of Louisville because no such legally cognizable entity existed at either the time of the alleged misconduct or the time of Brown's suit.  It then dismissed the § 1983 malicious-prosecution claim as time-barred because "[t]he claim itself . . . refers only to the murder charge," so it accrued when the murder charge was dismissed on February 24, 2015.  R. 43, PID 460–61.  In the alternative, the district court held that "Brown's malicious-prosecution claim is not adequately pleaded to survive a motion to dismiss" because it lacked specific factual allegations about how each individual Defendant violated Brown's rights.  *Id.* at

_____

[8]The district court put the parties on notice in this order that it intended to dismiss sua sponte the claims against Weathers, who never responded to the Complaint.  The district court dismissed the claims against Stalvey, Kuriger, Roberts, Alcorn, Sanford, Kessinger, and Wilkinson, effective immediately, and ordered Brown to show cause why his claims against Weathers should not be dismissed.

No. 23-5673        *Brown v. Louisville-Jefferson Cnty. Metro Gov't, et al.*        Page 7

PID 461.  Finally, it dismissed Brown's other § 1983 claims as insufficiently pleaded and declined to exercise supplemental jurisdiction over his remaining state-law IIED claim.[9]

Brown responded by seeking reconsideration of the dismissal of the § 1983 malicious-prosecution and fabrication-of-evidence claims and leave to amend the Complaint. The district court held that Brown's malicious-prosecution claim arising out of the murder charge was time-barred because "Brown had separate claims of malicious prosecution that accrued on different dates" and the murder-based claim could not be salvaged under the continuing-violation doctrine.  R. 53, PID 622–23.  But it granted Brown leave to amend the Complaint except as to that claim, and except as to several erroneously included defendants and an erroneously included claim.

Brown then filed the Amended Complaint.  It names only Alcorn, Downs, Jewell, Kuriger, the LJCMG, Sanford, and Smithers.  And it brings only five counts:  a § 1983 claim for malicious prosecution (Count 1), a § 1983 claim for fabrication of evidence (Count 2), a § 1983 claim for failure to intervene (Count 3), a § 1983 claim for conspiracy to deprive constitutional rights (Count 4), and a "*Monell* Claim" against the LJCMG (Count 5).  R. 54, PID 654–59.

After the district court entered judgment on the pleadings in favor of Alcorn and Sanford,[10] Jewell also moved for judgment on the pleadings.  Jewell argued that the claims against him other than the claims arising from the murder charge, which the district court had already held were time-barred, were insufficiently pleaded.  The district court granted Jewell's motion because "Brown's claims against Jewell are contradicted by the document upon which they rely"—Tyson's statement, which the court could consider because it was integral to the

---

[9]Prior to the district court's ruling, Brown voluntarily dismissed all his state-law claims against the LJCMG, his state-law malicious prosecution claims against all Defendants, his respondeat superior claim against the University of Louisville, and his state-law negligent supervision claims against Kessinger and Wilkerson.

[10]Alcorn and Sanford moved separately for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Procedure.  Alcorn argued that Brown failed to plead facts establishing his liability for Brown's § 1983 claims.  Sanford echoed Alcorn's argument and further contended that Brown's claims against him were barred by Kentucky's one-year statute of limitations because the only allegations against Sanford pertained to Brown's murder charge.  The district court agreed with Alcorn and Sanford and dismissed Brown's claims against them with prejudice.

No. 23-5673          *Brown v. Louisville-Jefferson Cnty. Metro Gov't, et al.*          Page 8

Amended Complaint.  R. 85, PID 831.  The remaining Defendants entered into a settlement agreement with Brown that resolved all remaining claims, and this appeal followed.

## II.  Standard of Review

"The district court's decision regarding a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed using the same de novo standard of review employed for a motion to dismiss under Rule 12(b)(6)."  *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).  Under that standard, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007)).  Applying that framework, "[a] motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'"  *Id.* (quoting *JPMorgan Chase Bank*, 510 F.3d at 582).  The court may consider "documents attached to the pleadings," documents that are "referred to in the pleadings and [are] integral to the claims," and "matters of public record" without converting a motion for judgment on the pleadings to a motion for summary judgment.  *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).  And "[w]hen an exhibit contradicts the complaint, the exhibit trumps the allegations." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 576 (6th Cir. 2021) (internal quotation marks and citation omitted); *accord Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 755 (6th Cir. 2020) ("[I]f the pleadings internally contradict verifiable facts central to a plaintiff's claims, that makes the plaintiff's allegations implausible." (cleaned up)).

## III.  Analysis

### A.  Forfeiture

Brown's opening brief addresses only the statute-of-limitations issue.  We therefore agree with Jewell that Brown has not preserved consideration of any other issues on appeal.  *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019) ("In this Circuit, an appellant forfeits an argument that he fails to raise in his opening brief."); *Doe v. Mich. State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021) ("Generally, an appellant abandons all issues not raised and argued in its

initial brief on appeal[, including] . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation . . . ." (internal quotation marks and citations omitted)).  Brown disputes this by pointing to his discussion of the facts.  But that does not excuse or negate his failure to develop any additional issues or arguments in his opening brief.  And considering issues other than the statute-of-limitations issue here is not necessary "to avoid a miscarriage of justice."  *Citizens Coal Council v. EPA*, 447 F.3d 879, 905 (6th Cir. 2006) (en banc) (internal quotation marks omitted).  For example, Brown makes no arguments regarding a change in statutory law or controlling precedent, or explaining why it would otherwise be a "miscarriage of justice" for us to not consider the forfeited issues.  *See id.* (citing cases).  We therefore consider only the statute-of-limitations issue in this appeal.

## B.  The Statute of Limitations

The parties dispute when Brown's malicious-prosecution claim against Jewell arising out of the murder charge accrued.  Brown argues that the claim did not accrue until the last of the charges against him were dismissed on April 5, 2016.  Jewell, on the other hand, contends that the claim accrued when the murder charge and the other remaining charges from the February 2009 indictment were dismissed on February 24, 2015.

Section 1983, which "allows plaintiffs to sue state actors who violate their constitutional rights," does not contain "time limits within which plaintiffs must seek redress for constitutional wrongs."  *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1008 (6th Cir. 2022).  Rather, the relevant statute of limitations "is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises."  *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007) (noting that despite "provid[ing] a federal cause of action," § 1983's "statute of limitations . . . is that which the [forum] State provides for personal-injury torts").  Because the § 1983 claims in this case arose in Kentucky, they are subject to Kentucky's one-year statute of limitations.  *Harper v. Jackson*, 293 F. App'x 389, 391 n.1 (6th Cir. 2008); Ky. Rev. Stat. § 413.140.

"The date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson*, 510 F.3d at 635. For a malicious-prosecution claim, "[b]ecause an element that must be alleged and proved . . . is termination of the prior criminal proceeding in favor of the accused, the statute of limitations in such an action does not begin to run until the plaintiff knows or has reason to know of such favorable termination." *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (internal quotation marks and citation omitted). "A plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). A plaintiff need not "show that the criminal prosecution ended with some affirmative indication of innocence." *Id.*; *id.* at 40 ("Before trial, the prosecution moved to dismiss the charges, and the trial judge in turn dismissed the case. The prosecutor did not explain why she sought to dismiss the charges, nor did the trial judge explain why he dismissed the case."); *see also Jones v. Clark Cnty.*, 959 F.3d 748, 765 (6th Cir. 2020) ("Categorically construing the favorable termination requirement to exclude plaintiffs whose cases were dismissed without prejudice would undermine the ability of malicious prosecution claims to hold officials accountable for baseless legal proceedings simply because those proceedings ended prior to a verdict."), *abrogated on other grounds by Thompson*, 596 U.S. 36.

Brown has shown that the criminal proceedings ended in his favor. The question, then, is when that happened.

## 1. Separability

Oddly, no case cited by the parties or identified by this court involves substantially similar facts. However, cases from the mixed-verdict context offer an analog to the question before the court here: whether the different charges against Brown are separable, such that the § 1983 malicious-prosecution claims arising out of the different charges accrued on different dates. In cases where there is a favorable termination on certain charges and a non-favorable termination, such as a conviction, on other charges, courts must determine whether plaintiffs have satisfied the favorable-termination element of a malicious-prosecution claim based on the favorably resolved charges. To answer that question, courts ruling on mixed-verdict cases consider whether the favorably and non-favorably terminated charges are intertwined, such that the entire proceeding did not terminate in the plaintiff's favor.

No. 23-5673          *Brown v. Louisville-Jefferson Cnty. Metro Gov't, et al.*          Page 11

In the criminal case underlying *Janetka v. Dabe*, Dabe was one of two police officers who responded to a call about a knife fight at a convenience store.  892 F.2d 187, 188 (2d Cir. 1989).  While one of the police officers was running warrant checks on Janetka and the other participant, Janetka was "yelling and pointing his finger at" the other participant.  *Id.*  "When Dabe told Janetka he might be arrested, Janetka responded with expletives.  Dabe arrested Janetka for disorderly conduct."  *Id.*  According to Dabe, Janetka then "began waving his arms," leading to a "struggle" that ended with "Janetka and the officers [falling] against the store window.  Janetka subsequently was charged with resisting arrest."  *Id.*  At trial, the jury found Janetka not guilty of resisting arrest but guilty of disorderly conduct.  *Id.* at 189.

After the criminal trial ended, Janetka brought multiple claims, including a claim for malicious prosecution.  *Id.* at 188.  The district court granted the defendants' motion for a directed verdict and dismissed the malicious-prosecution claim because it determined that Janetka's acquittal on the false arrest charge was not a "favorable termination" in light of his conviction on the disorderly conduct charge.  *Id.* at 189.  On appeal, the Second Circuit reversed, holding that Janetka's acquittal on the charge of resisting arrest was a favorable termination for purposes of his malicious-prosecution claim arising from that charge because the resisting-arrest and disorderly-conduct charges were "distinct offenses involving distinct allegations.  The disorderly conduct charge involved Janetka's actions directed at the unidentified [H]ispanic man; the resisting arrest charge involved his actions directed at the officers' attempts to arrest him. The elements of each charge are different; neither charge is a lesser included offense of the other."  *Id.* at 190.

In *Kossler v. Crisanti*, the Third Circuit applied a similar test in a case involving multiple charges arising from a single bar fight—aggravated assault, disorderly conduct, and public intoxication.  564 F.3d 181, 184 (3d Cir. 2009) (en banc), *abrogated in part by Thompson*, 596 U.S. 36.[11]  In a non-jury trial, the state court found Kossler guilty of disorderly conduct but not guilty of aggravated assault and public intoxication.  *Id.* at 185.  Kossler then brought multiple § 1983 claims, including a claim for malicious prosecution.  *Id.*  On appeal, the Third Circuit

---

[11]Although *Thompson* abrogated part of *Kossler*, "*Kossler's* mixed-verdict test remains intact post-*Thompson*."  *Jones v. Grill*, No. 21-2091, 2024 WL 3423707, at *2 n.4 (3d Cir. July 16, 2024).

No. 23-5673          *Brown v. Louisville-Jefferson Cnty. Metro Gov't, et al.*          Page 12

held that the charges were not separable, and that the entire proceeding did not end in Kossler's favor. *Id.* at 190. In reaching that conclusion, the court determined that the charges "cannot be divorced . . . when all three charges arose from the same course of conduct"—namely, "intentionally making physical contact with a city police officer after consuming alcohol." *Id.* at 189; *see also Jones v. Grill*, No. 21-2091, 2024 WL 3423707, at *2 (3d Cir. July 16, 2024) ("Where, as here, the prosecution ended without a conviction on only one of several charges, . . . to determine whether the prosecution was favorably terminated[,] . . . we consider whether the offenses of conviction and acquittal (1) share common elements or involve lesser-included offenses; and (2) stem from the same underlying conduct, such that they 'cannot be divorced.'" (quoting *Kossler*, 564 F.3d at 188–89)).

Applying those mixed-verdict factors to this case, the murder charge is separable from the other charges against Brown. The murder charge was based on a different "course of conduct," *Kossler*, 564 F.3d at 189, than the other charges because it was predicated on allegations involving a different victim and events occurring at a different time and place than the events underlying the other charges. It also involved different elements than the other charges, none of which were lesser-included offenses of murder (or vice versa). *Janetka*, 892 F.2d at 190; *Jones*, 2024 WL 3423707, at *2. Additionally, the murder charge and the other charges later dismissed in October 2015 and April 2016 involved unrelated factual circumstances and allegations, were brought in different indictments, and were dismissed on different dates. All those factors suggest separability. Notwithstanding Brown's argument to the contrary, that the murder charge and the other charges were brought by the same prosecutors in a series of indictments does not alter that conclusion.

Even were we to treat all the charges, and all of Defendants' actions to bring those charges, as acts in furtherance of a single conspiracy to punish Brown for not cooperating with the check-forging investigation, rather than separate violations of Brown's rights—a theory Brown did not clearly plead below—Brown's claims would still be untimely. This circuit and other circuits have held that "the existence of a conspiracy does not postpone accrual of appellant's separate claims." *McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988); *accord Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980) ("Characterizing

defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as 'a single series of interlocking events' does not postpone accrual of claims based on individual wrongful acts. . . . It is the wrongful act, not the conspiracy, which is actionable . . . ."); *Compton v. Ide*, 732 F.2d 1429, 1433 (9th Cir. 1984) ("The existence of a conspiracy does not generally postpone accrual of causes of action arising from the conspirators' separate wrongs."), *abrogated on other grounds by Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987). Brown's claims are therefore untimely even under a theory that each of his claims is a component of a single, overarching conspiracy.

Somewhat in tension with this conclusion is *Robinson v. Maruffi*, 895 F.2d 649 (10th Cir. 1990), a case cited by Brown below. In that case, Robinson was charged with the armed robbery of a shoe store and the murder of a police officer who was pursuing the armed robber. *Id.* at 651. At Robinson's first trial, Robinson's alleged accomplice, Reginald Walker—a key witness who received leniency on charges pending against him as part of a plea deal that required him to testify against Robinson—broke his plea agreement, withdrew his confession, and said that John Maruffi, the defendant officer, had fabricated his statement and forced him to memorize it. *Id.* at 653. Robinson was convicted anyway, but the New Mexico Supreme Court overturned his conviction on appeal. *Id.* (citing *State v. Robinson*, 662 P.2d 1341 (N.M. 1983)). At Robinson's second trial, his counsel presented evidence of the prosecution's using perjured testimony and Robinson was acquitted. *Id.* After his acquittal, Robinson brought § 1983 claims for conspiracy, false arrest, false imprisonment, and malicious prosecution. *Id.* at 653–54. The defendants argued that Robinson's claims were all time-barred under the applicable statute of limitations. *Id.* The Tenth Circuit held that the reversal of the first conviction did not cause the malicious-prosecution claim to accrue because Robinson was subject to being retried (and was retried) on the same charges using the same false evidence. *Id.* at 655. The court acknowledged that "discrete claims of . . . wrongs, despite their being averred as a continuing wrong, have been held barred where outside the time bar." *Id.* It was "persuaded, however, that all such claims here were essentially part of the malicious prosecution conspiracy," *id.*, and held that Robinson's claims therefore were not time-barred.

No. 23-5673          *Brown v. Louisville-Jefferson Cnty. Metro Gov't, et al.*          Page 14

The First Circuit has considered, but distinguished, *Robinson's* reasoning in civil-conspiracy cases.  *Nieves v. McSweeney*, 241 F.3d 46, 52 (1st Cir. 2001) ("[I]n *Robinson*, the conspiratorial agreement arose *before* the arrest . . . .  *Robinson* is the unusual case in which the malicious prosecution conspiracy began before the victim's arrest and encompassed it." (citations and footnotes omitted)); *Harrington v. City of Nashua*, 610 F.3d 24, 30 (1st Cir. 2010) ("In this case, as in *Nieves*, there is absolutely no evidence of a conspiracy that began before the date of the plaintiff's arrest.  The plaintiff and the officers were strangers, and the plaintiff has never alleged a preexisting conspiracy.  *Robinson* is, therefore, inapposite.").

*Robinson* and related cases are not on point here.  Robinson was retried on precisely the same charges using precisely the same false evidence in his second trial.  That difference goes directly to the separability inquiry.  And the First Circuit's distinction between conspiracies predating other claims and conspiracies postdating other claims also does not help Brown because the conspiracy in *McCune*, which is binding on us, predated both the plaintiff's arrest and the defendants' other wrongful acts in that case.  842 F.3d at 904.  Yet the *McCune* court still looked to each charge's separate date of accrual.  *Id.* at 906–07.

In short, the charges against Brown constitute multiple separable, overlapping prosecutions resolved on different dates for statute-of-limitations accrual purposes.  The other charges brought in the February 2009 indictment cannot delay accrual of Brown's claims arising out of the murder charge because the murder charge and the last of the other remaining charges from the February 2009 indictment were dismissed on the same date—February 24, 2015.  And even if each violation of Brown's rights was an act in furtherance of a single overarching conspiracy to punish him for not cooperating with the check-forging investigation, Brown's malicious-prosecution claims arising out of the murder charge accrued when that charge was dismissed.  Accordingly, Brown's malicious-prosecution claim against Jewell arising out of the murder charge is untimely under any of those theories of the case.

## 2.  The Continuing-Violation Doctrine

The continuing-violation doctrine does not compel a different conclusion.  A continuing violation can delay accrual of plaintiffs' causes of action.  *Eidson*, 510 F.3d at 635.

"The continuing-violation doctrine has two categories." *Howell v. Cox*, 758 F. App'x 480, 484 (6th Cir. 2018) (citing *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009), and *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997)).

The "test for determining whether a continuing violation exists" under the first category has three components: "wrongful conduct" that "continue[d] after the precipitating event that began the pattern"; "injury to the plaintiff" that "continue[d] to accrue after that event"; and such "further injury . . . hav[ing] been avoidable if the defendants had at any time ceased their wrongful conduct." *Eidson*, 510 F.3d at 635 (internal quotation marks omitted). "[C]ontinual ill effects from an original violation" do not meet this standard. *Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999) (quotation marks omitted). Rather, defendants must engage in "continual unlawful acts." *Id.* (quotation marks omitted). Similarly, "[p]assive inaction . . . does not support a continuing violation theory." *Id.*

"The second category of continuing violations exists when the defendant has committed several distinct acts of wrongdoing, and the cumulative effect of these acts amounted to a constitutional violation. But if the defendant's separate acts of wrongdoing are individually actionable, the continuing-violation doctrine does not apply." *Howell*, 758 F. App'x at 485 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 115–17 (2002); *Sharpe v. Cureton*, 319 F.3d 259, 266–67 (6th Cir. 2003); *Bowerman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local No. 12*, 646 F.3d 360, 366–67 (6th Cir. 2011)).

As the district court correctly noted, "[t]he last unlawful act Brown alleges is Downs's grand-jury testimony leading to the February 23, 2015[,] indictment—again, more than a year before he filed this lawsuit." R. 53, PID 623. Brown therefore fails to allege subsequent, "continual unlawful acts." *Tolbert*, 172 F.3d at 940 (quotation marks omitted). And a malicious-prosecution claim is based on a discrete prosecution and is individually actionable, even if carried out by the same police officers and prosecutors. *Cf. Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 2–4 (1st Cir. 1995) (holding that, where both appellants in a consolidated case alleged that the same undercover police officer and confidential informant "persuaded certain Commonwealth authorities to provide front money for undercover drug buys," "falsely identified

No. 23-5673          *Brown v. Louisville-Jefferson Cnty. Metro Gov't, et al.*          Page 16

appellants as the 'sellers' in two concocted undercover drug buys," and charged each appellant with selling one ounce of cocaine to the undercover police officer, the "appellants' [respective] section 1983 claims [against the same police officer and confidential informant] did not accrue until their respective criminal prosecutions ended in acquittals"). To rely on the second category of the continuing-violation doctrine, Brown therefore needs to show that the murder indictment was not a separate prosecution. And, as discussed above, he has not done so.

### 3. Other Precedent

None of the other cases Brown cites help him, either. *Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017), is factually distinguishable because it involved the simultaneous resolution of all charges by *nolle prosequi* motion. *Id.* at 477–79, 484 (describing the factual background and holding that "the limitations period does not begin to run while a criminal indictment *on the same charges* is outstanding" (emphasis added)). Similarly, *King v. Harwood* said nothing about whether different claims accrued on different dates. Rather, it held that the statute of limitations in that case did not begin to run until the single indictment in that case was dismissed. *King*, 852 F.3d at 579 (noting that after "the Kentucky Court of Appeals granted King relief," "King's case was remanded for trial on the same charges that formed part of the malicious prosecution for which King now seeks relief. Accordingly, the one-year statute of limitations period did not begin until . . . King's indictment was dismissed . . . ."). *King* is therefore consistent with Brown's claims arising from the murder charge accruing on a different date than his claims based on the charges dismissed on October 30, 2015, and April 5, 2016.

*McCune* treated McCune's different § 1983 claims as accruing on different dates—again, employing reasoning consistent with Brown's claims accruing on different dates. 842 F.2d at 904 (describing the factual background), 906 ("[T]he existence of a conspiracy does not postpone accrual of appellant's separate claims."), 906–07 (treating claims for false arrest, malicious prosecution, and wrongful suppression of exculpatory evidence as "discrete wrongs," "examin[ing] each claim to determine whether it is barred by the applicable statute of limitations," and holding that the claims accrued on different dates).

And *McDonough v. Smith,* 588 U.S. 109 (2019), also does not help Brown. That case "ar[ose] out of an investigation into forged absentee ballots." *Id.* at 112. As part of the investigation, the defendant "allegedly fabricated evidence" that he used to secure a grand-jury indictment against the plaintiff. *Id.* at 113. Although McDonough was indicted on multiple charges, he was acquitted of all charges on the same date. *Id.* ("The second trial ended with McDonough's acquittal on all charges on December 21, 2012."). McDonough then brought two claims—one for malicious prosecution and one for fabrication of evidence. *Id.* The malicious-prosecution claim was dismissed based on prosecutorial immunity and the fabrication-of-evidence claim was dismissed as untimely. *Id.* On appeal, the Supreme Court held that the fabrication-of-evidence claim accrued only once the criminal prosecution *based on that fabricated evidence* terminated. *Id.* at 119–20 ("There is not a complete and present cause of action to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing. Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*[ *v. Humphrey*, 512 U.S. 477 (1994)], will the statute of limitations begin to run." (quotation marks and citations omitted)). That holding has no bearing on whether the French murder charge and the other, later-dismissed charges against Brown constitute a single prosecution for statute-of-limitations purposes. And the factual differences in the two cases make Brown's attempt to extend *McDonough*'s logic about judicial economy a nonstarter.

## IV.

We recognize that none of the cases discussed above address the question presented here. But they provide useful analyses supporting our conclusion that the malicious-prosecution claim against Jewell based on the murder charge is time-barred. For the reasons set out above, we therefore AFFIRM.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-5673

PERCY DWAYNE BROWN,

    Plaintiff - Appellant,

    v.

LOUISVILLE-JEFFERSON   COUNTY   METRO
GOVERNMENT, et al.,

    Defendants,

JEFFREY G. JEWELL, in his individual capacity,

    Defendant - Appellee.

```
┌─────────────────────────┐
│         FILED           │
│      Apr 30, 2025       │
│  KELLY L. STEPHENS, Clerk │
└─────────────────────────┘
```

Before:  CLAY, WHITE, and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Kentucky at Louisville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

Kelly L. Stephens, Clerk